UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No.   **1:20-cv-22410**

MONICA DEL PINO,
as Personal Representative
of the Estate of Carlos Detoro,

       Plaintiff,

vs.

OCEANIA CRUISES S. de R.L.,
d/b/a OCEANIA CRUISES,

       Defendant.

_____/

## PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, MONICA DEL PINO, as Personal Representative of the Estate of Carlos Detoro, hereby sues OCEANIA CRUISES S. de R.L., d/b/a OCEANIA CRUISES, a Foreign for profit Corporation, (hereinafter "OCEANIA") and alleges as follows:

### THE PARTIES, JURISDICTION, AND VENUE

1.    Plaintiff, MONICA DEL PINO ("Mrs. Del Pino") is a citizen and resident of the State of Florida. Mrs. Del Pino has been, or in the future will be appointed as the Personal Representative of Carlos Detoro ("Mr. Detoro"), her deceased father.  This action is brought on behalf of the Estate of Carlos Detoro, as well as individual claims on behalf of the survivor, his daughter Monica Del Pino.

2.    Defendant, OCEANIA, is a foreign corporation with its worldwide headquarters, principal address, and principal place of business in Miami, Florida.

3.    The Court has jurisdiction over this matter because the causes of action asserted herein arise under 28 U.S.C. § 1333 and the General Maritime Laws of the United States.

4.     The Court has jurisdiction over OCEANIA pursuant to Florida Statutes §48.193 because (a) OCEANIA is engaged in substantial and not isolated business activity within this state, and routinely operates in the waters of this state; (b) the causes of action set forth herein arise from OCEANIA, personally and/or through its agents, operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state; and (c) the causes of action set forth herein arise from OCEANIA, personally and/or through its agents, committing tortious acts in whole or in part within this state.

5.     Venue is proper in this Court because OCEANIA's principal place of business is within Miami-Dade County and a substantial part of the events or omissions giving rise to the causes of action set forth herein occurred within the county. The cruise line ticket at issue also requires that suit be brought in this Court.

## FACTUAL BACKGROUND

6.     OCEANIA, as a common carrier, is engaged in the business of providing vacation cruises to the public aboard vessels including the OCEANIA *Marina.* At all times material hereto, OCEANIA owned, operated, managed, maintained, and/or controlled the OCEANIA *Marina*, including the medical department.

7.     OCEANIA, through online, television, radio and print advertisements specifically markets its cruises as the world's largest upper premium cruise line providing the highest quality cruise product for mature and discerning travelers.

8.     As part of providing vacation cruises, OCEANIA is obligated to provide competent medical care and facilities, as well as personnel capable of making sound medical and evacuation decisions.

9.     As part of providing vacation cruises, OCEANIA advertised that the ship's onboard medical center was staffed by international medical personnel.  OCEANIA advertised

that its doctors meet American College of Emergency Physicians and ICCL (International Council of Cruise Lines) guidelines, including: current physician licensure, three years of post-graduate / post-registration clinical practice in general and emergency medicine or Board certification in emergency medicine, family practice or internal medicine or competent skill level in advance life support and cardiac care.

10.     OCEANIA charges money to passengers for medical services provided.  As such, OCEANIA is in the business of providing medical services to passengers for profit, and owes a duty to provide competent and non-negligent medical care and services.

11.     OCEANIA owned, operated, controlled, and/or maintained the medical center aboard the *Marina*.   OCEANIA maintained a medical operations division at corporate headquarters in Miami, Florida.  The onboard medical center and medical operations division work as a team in the event of medical evacuation emergency.  OCEANIA is aware that medical emergencies may arise on its vessels and is aware of the essential need to promptly evacuate passengers suffering from serious medical emergencies.

12.     OCEANIA advertised that it has established contacts throughout the world with several different emergency rooms/hospitals where on board doctors can refer patients for medical care.

13.     OCEANIA, through its shore-side Fleet Medical Operations division, had the ability to control and monitor each and every step taken by its medical staff onboard via telephone, video conference, skype, or otherwise.

14.     OCEANIA's officials and employees had the ability to monitor and participate in safety, security, and medical emergencies onboard the vessel by communicating with the *Marina's* crew via telephone, videoconference, Skype and other means of communication. OCEANIA, through both the crew onboard and their shore-side officials and employees, who

*Del Pino v. OCEANIA*
*Complaint and Demand for Jury Trial*

acted in consultation with one another, failed to properly care and promptly and properly evacuate Mr. De Toro.

15.     Upon information and belief, the Master of the *Marina* was consulted regarding Mr. De Toro's condition and the emergent nature of the situation.  The Master is an employee or agent of OCEANIA and had the ability to divert or control the vessel or make the appropriate decision to afford one of its passengers the medical care and treatment he desperately needed. He and his bridge team are also responsible with determining the logistics for medical evacuation or disembarkation, properly coordinating the evacuation of sick and injured individuals, and ensuring that OCEANIA passengers are afforded the logistical support needed during a medical emergency.  This responsibility is carried out in conjunction with OCEANIA shore-based fleet operations and shore based individuals from OCEANIA that coordinate voyage logistics.

16.     At all times OCEANIA was vicariously liable for the negligence of the medical staff and doctors onboard the *Marina*, who were employees, apparent agents, or actual agents, of OCEANIA.

17.     At all times OCEANIA was vicariously liable for the negligence of the non-medical personnel onboard the *Marina*, who were employees, apparent agents, or actual agents, of OCEANIA.

18.     At all times OCEANIA had control or the right to control all persons working in its medical departments, including the Doctors and personnel that improperly treated and negligently mismanaged Mr. Detoro's condition.

19.     Mr. Detoro relied upon OCEANIA's representations regarding its available shipboard medical facility with its qualified and competent physicians in his decision to purchase the cruise and contract with OCEANIA.

20.     On February 24, 2020, Mr. Detoro boarded the *OCEANIA Marina* for a South American cruise from Argentina to Peru.  Mr. Detoro was a paying passenger.

21.     During the evening of February 26, 2020, Mr. Detoro presented to the *Marina's* medical center to receive care and treatment from the ship's physician for symptoms of weakness, sore throat, fever, chills, cough, and shortness of breath.  He was examined by Dr. Andrzej Gaszynski, M.D.

22.     At all times material, Dr. Gaszynski was an employee or agent of OCEANIA, as its ship physician and was at all time material acting within the course and scope of his employment or agency with OCEANIA.

23.     Dr. Gasynski diagnosed Mr. Detoro with strep throat and left lower lobe bronchitis.  Mr. Detoro was discharged to his stateroom to rest and instructed to follow up the next morning.

24.      The following morning, on February 27, 2020, Mr. Detoro reported to the Marina's medical center as instructed.  He was still ill, and was admitted to the medical center for observation and nebulization treatment.  Again he was discharged.

25.     Later that day, at around 1:30 p.m. Mr. Detoro's condition worsened.  He began to suffer from shortness of breath, wheezing, and respiratory distress.  His traveling companion called the medical center and Mr. Detoro was transported back by wheelchair.  The color of his body and face looked abnormal due to a lack of oxygen. At the medical center the decision was made to administer oxygen by nasal canula to improve his symptoms of shortness of breath, wheezing, and respiratory distress.

26.     A medical note from Dr. Andrzej authored at 8:12 p.m. indicates that Mr. Detoro was not feeling better; he was still coughing and suffering an elevated temperature.

*Del Pino v. OCEANIA*
*Complaint and Demand for Jury Trial*

Notwithstanding his worsening condition, Mr. Detoro was discharged from the *Marina* medical center and sent to his stateroom.  He was so weak and ill that medical staff had to push him back to his stateroom by wheelchair.  His condition continued to deteriorate after he was sent back to his stateroom without the benefit of observation, care and treatment.

27.     At around 3:00 a.m. on the morning of February 28, 2020, Mr. Detoro had to be readmitted to the *Marina* medical center, again for shortness of breath.  He was noted to be in respiratory distress and was put on oxygen.

28.     In the afternoon of February 28, 2020, at around 1:48 p.m., a consultation was conducted with a shore-side physician.  Dr. Gaszynski indicated that the treatment plan was to keep Mr. Detoro overnight in the ward for close monitoring, to repeat lab tests and to disembark Mr. Detoro ashore in Port Stanley, Falkland Islands via ambulance upon arrival.  Dr. Gaszynski noted that the vessel was still eighteen (18) hours away from port.

29.     The shore side physician responded to Dr. Gaszynski indicating that Mr. Detoro should be disembarked at the next available port for a full evaluation, that arterial blood gasses should be analyzed, and that respiratory support should be implemented, amongst other recommendations.

30.     Mr. Detoro's condition continued to decline as the hours passed on the excessively long journey towards the Falkland Islands.  He was suffering from hypoxemia and could not breathe normally.  Shortness of breath is a major red flag for any competent physician and should prompt urgent and serious action.  Despite Mr. Detoro's dire and life threatening condition, Dr. Gaszynski and the Oceania staff failed to timely and properly act and failed to timely and properly disembark Mr. Detoro from the *Marina*.

31.     Dr. Gaszynski and the Oceania medical staff negligently anchored their diagnosis and treatment on strep throat and bronchitis, which are not life threatening conditions.  They

failed to ascertain Mr. Detoro's arterial blood gas levels and failed to properly treat his shortness of breath and the lack of oxygen to his body.  They failed to timely and properly intubate and ventilate him.

32.     At around 9:35 p.m. Dr. Gaszynski noted that Mr. Detoro was not breathing properly, he was only occasionally gasping for air.  He was connected to a cardiac monitor which revealed pulseless electrical activity.  Only at that point too far, long after the proper window for treatment had passed, did Dr. Gaszynski elect to intubate and ventilate Mr. Detoro.   Dr. Gaszynski excessive delay in intubating Mr. Detoro caused Mr. Detoro's organs to fail and cardiac arrest.  Mr. Detoro was pronounced dead at 10:10 p.m.

33.     The afore described acts of negligence, excessive and unreasonable negligent delay in disembarking the patient to a higher level of care, and excessive and unreasonable negligent delays in administering proper treatment caused Mr. Detoro to suffer greatly and directly and proximately led to his death.

34.     OCEANIA's physicians, including Dr. Gaszynski and the OCEANIA shoreside medical team are aware of the time-sensitive nature of respiratory distress and shortness of breath.  It is known by OCEANIA that such a condition calls for urgent treatment at a capable facility.  Furthermore, time is of the essence in intubating and ventilating a patient who is unable to breath on their own.

35.     In light of the symptoms and manifestations exhibited by Mr. Detoro, any reasonably prudent healthcare provider in Dr. Gaszynski's position would have known that a medical air-evacuation or other expeditious disembarkation to a comprehensive treatment center was medically necessary.

36.     An air-evacuation was both medically necessary and operationally feasible to transport Mr. Detoro to a higher level of care.

37.     Despite Mr. Detoro's dire condition which required urgent disembarkation to a higher level of care, and knowing that an air evacuation with a helicopter, rendezvous with a rescue vessel, or expeditious diversion of the vessel to a point of debarkation was operationally feasible, OCEANIA failed to analyze or inquire as to possible disembarkation options to assist Mr. Detoro.  Instead, the decision was made to keep him on the vessel for an excessive and medically unacceptable period of time.  He was left without the proper care and treatment that he needed as a result.

38.     OCEANIA personnel made the decision to continue to the Falkland Islands, its scheduled itinerary, without making any effort or arrangements to medically evacuate Mr. Detoro or get him to a higher level of care capable of treating him for his condition prior to arrival at the pre-planned port of call.  It appears that the Master and shore-side fleet operations never consulted any third-parties, or examined any possibilities for medical disembarkation or evacuation other than continuing on the pre-arranged voyage plan.  Their aim was clear, to avoid operational disruption to the great detriment of their passenger.

39.     The failure to properly evaluate Mr. Detoro and disembark him to a proper level of care, and the corresponding delays caused by OCEANIA, prevented him from being emergently evacuated from the *Marina* and evaluated by specialists who are trained to treat such patients.

40.     The delays caused by OCEANIA's negligence caused Mr. Detoro to suffer devastating injuries, the loss of oxygen to the organs of his body, and directly and proximately caused his death.

41.     All conditions precedent to the commencement of this action have been performed, waived, or otherwise satisfied.

## COUNT I – NEGLIGENCE

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 41 of this Complaint.

42.     In light of OCEANIA's experience and familiarity with the demographics of the passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises, the foreign destinations visited on its cruises, and the illnesses and emergencies experienced by past cruise passengers, it was reasonably foreseeable to OCEANIA that the *Marina* would have passengers similar in age to Mr. Detoro, and passengers with common illnesses and emergencies such as his condition. Likewise, it was reasonably foreseeable that such passengers would require proper examination, evaluation, treatment, and evacuation.

43.     OCEANIA owed the duty of exercising reasonable care under the circumstances. In particular, as Mr. Detoro suffered shortness of breath and respiratory failure onboard the *Marina* and was taken to the ship's medical center, OCEANIA owed Mr. Detoro the duty of protecting him from injury relating to his emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

44.     OCEANIA breached its duty of protecting Mr. Detoro from injury relating to his emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. OCEANIA breached its duty in one or more of the following ways:

a.      OCEANIA failed to properly treat Mr. Detoro;

b.      OCEANIA negligently misdiagnosed and anchored on the wrong diagnosis;

c.     OCEANIA failed to perform or arrange for appropriate diagnostics testing given Mr. Detoro's condition;

d.     OCEANIA failed to obtain consultations with appropriate specialists;

e.     OCEANIA failed to properly monitor Mr. Detoro;

f.     OCEANIA failed to air-evacuate Mr. Detoro from the ship so that he could promptly receive treatment;

g.     OCEANIA  failed to timely divert the ship so that Mr. Detoro could promptly receive treatment;

h.     OCEANIA failed to properly or timely consult qualified shore-based personnel regarding Mr. Detoro 's condition;

i.     OCEANIA failed to obtain a proper medical opinion regarding Mr. Detoro 's condition;

j.     OCEANIA failed to timely utilize "Telemedicine" and other resources on the vessel to properly assess Mr. Detoro's condition;

k.     OCEANIA failed to develop and institute adequate procedures and policies to address Mr. Detoro 's medical situation;

l.     OCEANIA failed to appreciate the severity of Mr. Detoro's worsening condition;

m.     OCEANIA failed to perform any procedure to Mr. Detoro's medical benefit;

n.     OCEANIA failed to properly ascertain sufficient information to determine where Mr. Detoro  should be transferred;

o.     OCEANIA deviated from the standard of care for treating patients in Mr. Detoro's condition.

45.     OCEANIA knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that caused Mr. Detoro's death. These conditions and failures were longstanding and obvious to OCEANIA.  OCEANIA is aware that

passengers may suffer from life threatening conditions such as shortness of breath and respiratory failure, and are aware of the urgent need to evacuate such patients to competent medical centers capable of providing treatment.

46.     As a direct and proximate result of OCEANIA breaching its duty to Mr. Detoro, he suffered greatly and died.  If Mr. Detoro had received appropriate care and treatment onboard or been timely evacuated from the ship, he would not have suffered such devastating injuries causing his death.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against OCEANIA for all damages recoverable under the law.

### COUNT II – NEGLIGENCE OF NON-MEDICAL PERSONNEL
**(Vicarious Liability Based Upon Actual Agency / *Respondeat Superior*)**

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 41 of this Complaint.

47.     In light of OCEANIA's experience and familiarity with the demographics of the passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises, the foreign destinations visited on its cruises, and the illnesses and emergencies experienced by past cruise passengers, it was reasonably foreseeable to OCEANIA that the *Marina* would have passengers similar in age to Mr. Detoro, and passengers with common illnesses and emergencies such as his condition. Likewise, it was reasonably foreseeable that such passengers would require proper medical logistical support and medical evacuation.

48.     OCEANIA, through its non-medical personnel, including its officers, directors, employees, agents, servants and/or persons otherwise authorized to act on behalf of OCEANIA, both on board the *Marina* and located at OCEANIA's shore-side offices, owed the duty of exercising reasonable care under the circumstances. In particular, as Mr. Detoro suffered shortness of breath and respiratory failure onboard the *Marina* and was taken to the ship's

medical center, OCEANIA owed the duty of protecting him from injury relating to his emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

49.     OCEANIA, through the negligence of its non-medical personnel, breached its duty to exercise reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. OCEANIA breached its duty in one or more of the following ways:

      a.     OCEANIA failed to timely and properly communicate the condition of Mr. Detoro to its shore side personnel;

      b.     OCEANIA failed to follow proper policies and procedures to ascertain the operational feasibility of a medical evacuation for Mr. Detoro;

      c.     OCEANIA failed to air-evacuate Mr. Detoro  from the ship so that he could promptly receive treatment;

      d.     OCEANIA failed to timely divert the ship so that Mr. Detoro could promptly receive treatment;

      e.     OCEANIA failed to evacuate Mr. Detoro by speed boat, tender boat, or transfer;

      f.     OCEANIA refused to alter its itinerary to transport Mr. Detoro, electing to avoid operational disruption over the needs of its critically ill guest.

50.     OCEANIA, through its non-medical personnel, knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that caused the death of Mr. Detoro. These conditions and failures were longstanding and obvious to OCEANIA.

51.     As a direct and proximate result of OCEANIA breaching its duty to Mr. Detoro, he suffered greatly and died.  If Mr. Detoro had received appropriate care and treatment onboard

or been timely evacuated from the ship, he would not have suffered such devastating injuries and died.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against OCEANIA for all damages recoverable under the law.

<u>**COUNT III – NEGLIGENCE OF MEDICAL PERSONNEL**</u>
**(Vicarious Liability Based Upon Actual Agency / *Respondeat Superior*)**

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 41 of this Complaint.

52.     OCEANIA's medical personnel, including the doctors and nurses on board the *Marina*, were the employees, agents, servants and/or persons otherwise authorized to act on behalf of OCEANIA. Thus, OCEANIA is vicariously liable for the acts and/or omissions of its medical personnel.

53.     OCEANIA acknowledged that its medical personnel, including the doctors and nurses onboard the *Marina*, would act for it, and the medical personnel manifested an acceptance of the undertaking. For example: (1) OCEANIA  directly paid the medical personnel for their work in the medical center onboard the *Marina*; (2) the medical center on board the *Marina* was created, owned and operated by OCEANIA; (3) the medical personnel on board the *Marina* worked at what OCEANIA describes in its advertising as OCEANIA's medical center; and (4) OCEANIA knowingly provided, and the medical personnel on board the *Marina* knowingly wore, uniforms bearing OCEANIA's name and logo; the ship physician on the *Marina* is considered and titled an officer of OCEANIA's cruise line.

54.     OCEANIA's medical personnel, including the doctors and nurses on board the *Marina*, were subject to the right of control by OCEANIA, and were acting within the scope of their employment or agency. For example: (1) the medical personnel were employed by OCEANIA; (2) the medical personnel were hired to work in a medical center on board the

*Marina* that was created, owned and operated by OCEANIA; (3) the medical personnel were paid salaries and/or other employment related benefits directly by OCEANIA; (4) the medical personnel on board the *Marina* were considered to be members of the ship's crew; (5) the medical personnel were required to wear uniforms or other insignia furnished by OCEANIA; (6) OCEANIA put the medical personnel on board the *Marina* under the command of the ship's superior officers, and they were subject to the ship's discipline and the master's orders; (7) OCEANIA had the right to fire its medical personnel; (8) OCEANIA directly billed the Plaintiff and other passengers onboard the *Marina* for services rendered by its medical personnel and/or use of the onboard medical center, medical equipment and medical supplies; and (9) the medical personnel on board the *Marina* were subject to the control of OCEANIA's shore-side medical department.

55.     OCEANIA, through its medical personnel, owed Mr. Detoro the duty of exercising reasonable care under the circumstances. In particular, as Mr. Detoro suffered shortness of breath and respiratory failure on board the *Marina* and was taken to the ship's medical center, OCEANIA owed Mr. Detoro the duty of protecting him from injury relating to his emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

56.     OCEANIA, through its medical personnel, breached its duty of protecting Mr. Detoro from injury relating to his emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. OCEANIA, through its medical personnel, breached its duty in one or more of the following ways:

a.    OCEANIA failed to properly treat Mr. Detoro;

b.    OCEANIA negligently misdiagnosed and anchored on the wrong diagnosis;

c.    OCEANIA failed to perform or arrange for appropriate diagnostics testing given Mr. Detoro's condition;

d.    OCEANIA failed to obtain consultations with appropriate specialists;

e.    OCEANIA failed to properly monitor Mr. Detoro;

f.    OCEANIA failed to air-evacuate or expeditiously disembark Mr. Detoro from the ship so that he could promptly receive treatment;

g.    OCEANIA  failed to timely divert the ship so that Mr. Detoro could promptly receive treatment;

h.    OCEANIA failed to evacuate Mr. Detoro by speed boat, tender boat, or transfer;

i.    OCEANIA failed to properly or timely consult qualified shore-based personnel regarding Mr. Detoro 's condition;

j.    OCEANIA failed to obtain a proper medical opinion regarding Mr. Detoro 's condition;

k.    OCEANIA failed to timely utilize "Telemedicine" and other resources on the vessel to properly assess Mr. Detoro's condition;

l.    OCEANIA failed to develop and institute adequate procedures and policies to address Mr. Detoro 's medical situation;

m.    OCEANIA failed to appreciate the severity of Mr. Detoro's worsening condition;

n.    OCEANIA failed to perform any procedure to Mr. Detoro 's medical benefit;

o.    OCEANIA failed to timely intubate and ventilate Mr. Detoro;

     p.     OCEANIA negligently failed to monitor Mr. Detoro's oxygen levels or analyze his blood gas;

     q.     OCEANIA deviated from the standard of care for treating patients in Mr. Detoro's condition.

57.     OCEANIA, through its medical personnel, knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to OCEANIA.

58.     As a direct and proximate result of OCEANIA breaching its duty to Mr. Detoro, he suffered greatly and died.  If Mr. Detoro had received appropriate care and treatment onboard or been timely evacuated from the ship, he would not have suffered and died.

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against OCEANIA for all damages recoverable under law.

## COUNT IV – NEGLIGENCE OF MEDICAL PERSONNEL
### (Vicarious Liability Based Upon Apparent Agency)

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 41 of this Complaint.

59.     OCEANIA's medical personnel, including the doctors and nurses on board the Marina, were the apparent employees, agents, servants and/or persons otherwise authorized to act on behalf of OCEANIA. Thus, OCEANIA is vicariously liable for the acts and/or omissions of its medical personnel.

60.     OCEANIA made representations to the Plaintiff and other passengers onboard the *Marina* that the ship's medical personnel were the employees, agents, servants and/or persons otherwise authorized to act for OCEANIA's benefit. For example: (1) OCEANIA promoted the medical personnel on board the *Marina* and represented them as being OCEANIA employees through brochures, internet advertising and/or signs, documents, and uniforms on the ship; (2) OCEANIA promoted the medical center on board the *Marina* and described it in proprietary

*Del Pino v. OCEANIA*
*Complaint and Demand for Jury Trial*

language; (3) the medical personnel on board the *Marina* worked in the medical center that OCEANIA promoted and described in proprietary language; (4) OCEANIA directly bills the Plaintiff and other passengers onboard the *Marina* for services rendered by the onboard medical personnel and/or use of the onboard medical center, medical equipment and medical supplies; (5) the medical personnel on board the *Marina* were required to wear uniforms or other insignia furnished by OCEANIA; (6) OCEANIA held out the medical personnel on board the *Marina* as members of the ship's crew; and (7) the medical personnel on board the *Marina* spoke and acted as though they were employed by OCEANIA. OCEANIA had knowledge of such representations but never took any action to indicate otherwise.

61.     OCEANIA's representations to the Plaintiff and other passengers onboard the *Marina* caused them to reasonably believe that the ship's medical personnel were the employees, agents, servants and/or persons otherwise authorized to act for OCEANIA's benefit. Indeed, OCEANIA actually intended that the Plaintiff and other passengers onboard the *Marina* have such perception or belief because it is a marketing tool to induce passengers such as the Plaintiff to purchase cruises on OCEANIA ships in the first place, to feel secure while on board OCEANIA s' ships and/or to be a repeat customer.

62.     OCEANIA s' representations to the Plaintiff and other passengers onboard the *Marina* induced their detrimental, justifiable reliance upon the appearance of agency. For example, Mr. Detoro justifiably relied upon OCEANIA s' representations in deciding to purchase a cruise on the *Marina*.

63.     OCEANIA, through its medical personnel, owed Mr. Detoro the duty of exercising reasonable care under the circumstances. In particular, as Mr. Detoro suffered shortness of breath and respiratory failure onboard the *Marina* and was taken to the ship's medical center, OCEANIA owed Mr. Detoro the duty of protecting him from injury relating to

17

his emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

64.     OCEANIA, through its medical personnel, breached its duty of protecting Plaintiff from injury relating to his emergent condition, and of exercising reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances. OCEANIA, through its medical personnel, breached its duty in one or more of the following ways:

a.     OCEANIA failed to properly treat Mr. Detoro;

b.     OCEANIA negligently misdiagnosed and anchored on the wrong diagnosis;

c.     OCEANIA failed to perform or arrange for appropriate diagnostics testing given Mr. Detoro's condition;

d.     OCEANIA failed to obtain consultations with appropriate specialists;

e.     OCEANIA failed to properly monitor Mr. Detoro;

f.     OCEANIA failed to air-evacuate or expeditiously disembark Mr. Detoro from the ship so that he could promptly receive treatment;

g.     OCEANIA  failed to timely divert the ship so that Mr. Detoro could promptly receive treatment;

h.     OCEANIA failed to evacuate Mr. Detoro by speed boat, tender boat, or transfer;

i.     OCEANIA failed to properly or timely consult qualified shore-based personnel regarding Mr. Detoro 's condition;

j.     OCEANIA failed to obtain a proper medical opinion regarding Mr. Detoro 's condition;

k.     OCEANIA failed to timely utilize "Telemedicine" and other resources on the vessel to properly assess Mr. Detoro's condition;

l.     OCEANIA failed to develop and institute adequate procedures and policies to address Mr. Detoro 's medical situation;

m.    OCEANIA failed to appreciate the severity of Mr. Detoro's worsening condition;

n.     OCEANIA failed to perform any procedure to Mr. Detoro 's medical benefit;

o.     OCEANIA failed to timely intubate and ventilate Mr. Detoro;

p.     OCEANIA negligently failed to monitor Mr. Detoro's oxygen levels or analyze his blood gas;

q.     OCEANIA deviated from the standard of care for treating patients in Mr. Detoro's condition.

65.    OCEANIA, through its medical personnel, knew or reasonably should have known about these conditions and failures, but failed to correct them prior to the incident that injured Plaintiff. These conditions and failures were longstanding and obvious to OCEANIA.

66.    As a direct and proximate result of OCEANIA breaching its duty to Mr. Detoro, suffered greatly and died.  If Mr. Detoro had received appropriate care and treatment onboard or been timely evacuated from the ship, he would not have suffered such devastating injuries and died.

## <u>COUNT V – NEGLIGENT HIRING / RETENTION</u>

Plaintiff re-alleges and incorporates by reference paragraphs 1 – 41 of this Complaint.

67.    In light of OCEANIA's experience and familiarity with the demographics of the passengers on its cruises, the onboard and offshore recreational activities taking place on its cruises, the foreign destinations visited on its cruises, and the illnesses experienced by past cruise passengers, it was reasonably foreseeable to OCEANIA *Marina* would have passengers similar in age to the Mr. Detoro, and passengers with common illnesses such as the Mr. Detoro's

condition. Likewise, it was reasonably foreseeable that such passengers would require proper examination, evaluation and treatment.

68.     OCEANIA owed Mr. Detoro the duty of exercising reasonable care to employ competent and fit medical personnel, including competent and fit doctors and nurses on board the *Marina*. However, Oceania's doctor, Dr. Andrzej Gaszynski, M.D. was incompetent and unfit to perform the requisite examination, evaluation and treatment for passengers like Mr. Detoro, and OCEANIA knew or reasonably should have known that he was incompetent and unfit to do so.

69.     OCEANIA breached its duty by retaining and hiring an incompetent and unfit physician. For example, OCEANIA failed to conduct an appropriate background investigation to determine if Dr. Gaszynski was qualified by training and/or experience, and if he was capable of conducting an appropriate examination and/or evaluation for purposes of treatment or referral for appropriate treatment to a shore side facility. An appropriate investigation by OCEANIA would have revealed the incompetence or unfitness of Dr. Gaszynski to examine, evaluate, treat or refer to an appropriate shore side facility or physician to treat conditions such as those Mr. Detoro suffered from. It was unreasonable for OCEANIA to hire and retain Dr. Gaszynski in light of the information it knew or should have known.

70.     Specifically, OCEANIA knew that in 2015 it was sued along with Dr. Gaszynski (the same physician who provided negligent treatment to Mr. Detoro) for medical malpractice that occurred previously on the *Marina* in the case styled *Kevin Bybee, as Personal Representative of the Estate of Stephen Bybee v. Oceania Cruises, Inc and Andrzej Adam Gaszynski, M.D.*, Case No.: 1:15-cv-22239-JEM in the Southern District of Florida, Miami Division.  At the time of the suit, Dr. Gaszynski worked for OCEANIA.  The Bybee case also

involved failing to render proper care and treatment to a guest suffering shortness of breath, difficulty breathing, and a heart attack. Despite actual knowledge of Dr. Gasynski's documented negligence and failure to properly identify and timely and adequately treat patients with shortness of breath and difficulty breathing resulting in the previous death of a patient, OCEANIA continued to retain him and re-hired him for subsequent contracts as a ship physician.

71.     As a direct and proximate result of OCEANIA's negligent retention and hiring of Dr. Gaszynski, OCEANIA allowed Dr. Gaszynski to provide negligent care to Mr. Detoro leading to his death. Had OCEANIA terminated Dr. Gaszynski after the previous medical malpractice case, he would not have been able to negligently treat Mr. Detoro in this case.

72.     OCEANIA physicians are hired on contracts that last less than a year. This means that since the 2015 malpractice lawsuit against Dr. Gaszynski, OCEANIA had to rehire or renew his contract multiple times and did so with actual knowledge of his incompetence and unfitness.

73.     OCEANIA breached its duty by hiring and then retaining Dr. Gaszynski knowing of his unfitness and failing to take further action such as investigating, discharging, or reassigning him.

74.     As a direct and proximate result of the incompetence or unfitness of OCEANIA's physician Dr. Gaszynski, Mr. Detoro suffered severe injuries resulting in his wrongful death. If Dr. Gaszynski had been competent and fit, Mr. Detoro would have received appropriate care and treatment or been timely evacuated from the ship so that he would not have suffered such a devastating, irreversible injury resulting in his wrongful death.

*Del Pino v. OCEANIA*
*Complaint and Demand for Jury Trial*

WHEREFORE, Plaintiff, respectfully requests that this Court enter judgment against OCEANIA for all damages recoverable under law.

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff demands a trial by jury on all claims set forth herein.

Dated this 11th day of June, 2020.

Respectfully submitted,

By: */s/ Thomas Scolaro*
**Thomas Scolaro** (FBN 178276)
scolaro@leesfield.com
**Thomas D. Graham** (FBN 89043)
graham@leesfield.com
LEESFIELD SCOLARO, P.A.
2350 South Dixie Highway
Miami, Florida 33133
Telephone: 305-854-4900
Facsimile:  305-854-8266

*And*

**Aaron P. Davis** (FBN 58463)
advais@davisgoldman.com
DAVIS GOLDMAN, PLLC
Four Seasons Tower
1441 Brickell Avenue, Suite 1400
Miami, FL 33131
Telephone: 305-800-6673
Facsimile: 305-675-7880

**ATTORNEYS FOR PLAINTIFF**